SARAH H. THOMPSON vs. JOHN H. CASHMAN.

Essex.    January 16, 1902. — March 1, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Witness*, Impeachment. *Evidence*, Communications between attorney and client.

Where an attempt is made in cross-examining a plaintiff to impeach her credibility
by showing that she is a spiritualist, and she says in answer, that she is not a
spiritualist, it does not matter whether this was admissible or not, as the attempt
failed and did the plaintiff no harm.

The counsel for a plaintiff was allowed to testify to conversations between the
plaintiff, himself and the ·defendant, when they were all together, with a ste-
nographer, in his office.  He was acting at the time for the defendant as well as
for the plaintiff.  *Held*, that the conversations were not privileged.

HOLMES, C. J.   This is a bill to redeem a mortgage.   There
was a controversy with regard to the amount to be paid, the case
was sent to a master, he reported in favor of the defendant sub-
ject to exceptions taken by the plaintiff, and the Superior Court
overruled the exceptions and made a decree in accordance with
the report.   The plaintiff appealed.   The only exception not
waived is to the master's admitting certain evidence of conversa-
tions of the plaintiff with her counsel.

The plaintiff having taken the stand was cross-examined on
the subject in controversy.   Her evidence was that she did say
that the mortgage was lost; that she did not say a spiritualist
told her so; that she did not remember saying anything about
spiritualists, and that she never said that she was a peculiar
woman, or had second sight into the future.   The attempt, obvi-
ously, was to impeach her credibility by showing that she was
a spiritualist and made statements on the faith of spiritualist
communications, but it failed.   Without going into more general
matters, it is enough to say that taken by itself the plaintiff's
testimony, whether rightly or wrongly admitted, did her no
harm.   Later, it is true, her counsel was called and testified that
she said that she believed that the mortgage note was lost and
that she never signed it, because a clairvoyant told her so.   But
this was in answer to questions by the plaintiff, to which she
hardly can object now.

In his direct examination the same counsel was allowed to testify to conversations between the plaintiff, himself and the defendant, when they were all together, with a stenographer, in his office. The witness was acting for the defendant as well as for the plaintiff, if he was acting for the plaintiff at the time. Very plainly these conversations were not privileged. *Whiting* v. *Barney*, 30 N. Y. 330. *Gulick* v. *Gulick*, 12 Stew. 516. *Hanlon* v. *Doherty*, 109 Ind. 37. *Rice* v. *Rice*, 14 B. Mon. 417. *Michael* v. *Foil*, 100 N. C. 178. See also *Weeks* v. *Argent*, 16 M. & W. 817.

It is difficult to see how the plaintiff could have profited even if her exception had been sustained. We cannot doubt that the master would have come to the same conclusion if spiritualists had not been mentioned.

*Decree affirmed.*

*E. S. Spalding & C. J. Stone*, for the plaintiff.
*H. J. Cole*, for the defendant.