BESSIE R. DAVIS, administratrix, *vs.* HOTELS STATLER
COMPANY, INC.

Suffolk.   November 6, 8, 1950. — February 12, 1951.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Evidence,* Cross-examination; Refreshment of witness's recollection;
Opinion: expert; Hypothetical question. *Practice, Civil,* Discretionary
control of evidence; Exceptions: whether error harmful. *Witness,*
Cross-examination, Refreshment of recollection. *Error,* Whether error
harmful.

At the trial of an action by an administratrix for conscious suffering and
death of her intestate, where the issue was whether a cut in a finger
sustained at the defendant's barber shop or a heart ailment was the
cause of death, questions to the plaintiff, who was the widow of the
intestate, and her son on cross-examination as to their knowledge of a
claim and suit by the plaintiff on an accident insurance policy of the
intestate, of a request by the insurance company for an autopsy, and
of the cause of death were properly admitted in the discretion of the
judge.

Technical impropriety in allowing a witness to read to the jury his exact
words in a deposition in another case used to refresh his recollection
was harmless where he finally testified that his testimony was based
entirely on his memory, and there was other competent evidence to the
same effect as the statements in his deposition.

Hypothetical questions put to an expert witness on direct examination
at the trial of an action were properly admitted where there was evi-
dence from which the jury could have found that the facts embraced
in the questions were true.

TORT.   Writ in the Superior Court dated August 28, 1946.
The action was tried before *Burns,* J.

*G. L. Rabb, (C. P. Huse, Jr.,* with him,) for the plaintiff.
*P. S. Ratzkoff,* for the defendant.

COUNIHAN, J.   This is an action of tort in two counts, one
for conscious suffering and one for death of Jacob Davis,
the plaintiff's intestate, as the result of an accident on Oc-
tober 16, 1945.   The plaintiff alleged that the decedent
suffered a cut in his finger while getting a manicure in the

barber shop of the defendant. He died suddenly on December 22, 1945, while attending a Christmas office party. He was treated by a physician for the cut and hospitalized for eleven days before being discharged about December 1, 1945. The action was tried to a jury who found for the defendant on both counts. The action is here on exceptions of the plaintiff, approximately thirty-five in number to the admission of evidence and one to the denial of her motion for a new trial. An exception to the admission of a question and answer in the defendant's answers to the plaintiff's interrogatories was not argued by the plaintiff and is treated as waived.

In order to evaluate the exceptions which relate to the admissibility of evidence, they must be considered in the light of all the evidence which bore on the sole issue presented to the jury which was: What was the cause of the death of the decedent? The plaintiff contended that the death resulted from infection due to the cut in his finger. The defendant contended that it was the result of a long continued and serious heart ailment. The plaintiff admitted that the decedent had had a mild heart condition but maintained that he had only one slight attack in 1942. The certificate of death of the medical examiner, which was in evidence without objection, pronounced the cause of death as "coronary sclerosis."

Approximately ten of the exceptions related to questions put to the plaintiff [1] and her son by the defendant in cross-examination. They fell roughly into three groups, (1) as to their knowledge of a claim and suit by the plaintiff on an accident insurance policy of the decedent; (2) as to their knowledge of a request by the insurance company for an autopsy; and (3) as to their knowledge of the cause of death of the decedent. In most instances the answers of the witnesses were "No" or "I don't remember." In other instances testimony sought by these questions came in unchallenged during subsequent testimony of the plaintiff,

---

[1] The plaintiff was the widow of the decedent. — REPORTER.

which cured the harm, if any, caused by the admission of these questions. *Bonnemort* v. *Gill*, 165 Mass. 493, 495. *Thompson* v. *Cashman*, 181 Mass. 36. *Mullin* v. *Boston Elevated Railway*, 185 Mass. 522, 526. *Newton Construction Co.* v. *West & South Water Supply District of Acton*, 326 Mass. 171, 174–175. In any event, all of these exceptions were taken to questions put by the defendant in cross-examination, and the extent to which cross-examination may go rests in the control and discretion of the judge. *Phillips* v. *Vorenberg*, 259 Mass. 46, 73. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 523. *Commonwealth* v. *Beal*, 314 Mass. 210, 229. In *Campbell* v. *Ashler*, 320 Mass. 475, at page 481, it was said, "The extent to which a party may go in impeaching the testimony of witnesses called by his opponent on matters not vital to the case, as well as the limits of cross-examination in general, are within the control of the trial judge."

All other exceptions but two relate to questions in direct examination by the defendant to the family doctor of the decedent who was called as a witness by the defendant. The witness was not declared to be hostile but he was, to say the least, noncoöperative. It appeared that the witness had answered questions relating to the physical condition of the decedent in a deposition taken for use in another case in 1947. The defendant had this deposition in its possession and the witness was given an opportunity to see it before he testified. Many of the questions to which exceptions were taken were put to the witness to prove that he had made at other times statements inconsistent with his testimony in this action. G. L. (Ter. Ed.) c. 233, § 23. When the witness failed to recall making such statements, the questions and answers in the deposition were used to refresh his recollection. In some instances his memory was refreshed and the witness was permitted to testify to the facts as he recalled them after his memory had been stimulated or revived by the deposition. In some instances the witness was permitted to read to the jury the exact words of his answers in the deposition on the theory that his recollection had

been refreshed.   This was technically improper.   *Bendett* v. *Bendett*, 315 Mass. 59, 63.   But it was also said in that case at page 65, "the exception . . . cannot be sustained if she was not harmed, or, in the language of G. L. (Ter. Ed.) c. 231, § 132, if this court 'deems that the error complained of has not injuriously affected the substantial rights of the parties.'"   There was other competent testimony to the same effect as that disclosed in the answers complained of. Indeed there was unchallenged testimony from this same witness that the decedent for six months or a year before his death had been suffering from coronary sclerosis and had been treated by the witness for it.   Even without the information revealed in these answers, there was evidence from which the jury could find, as they apparently did, that the decedent had been suffering for a long time from a serious heart ailment which ultimately caused his death.   It is to be noted too that the witness later testified that everything he had said with respect to Jacob Davis or any testimony he had ever given with respect to Jacob Davis was based entirely on his, the witness's, memory.   This likewise cured any harm.   *Commonwealth* v. *Parrotta*, 316 Mass. 307, 312–313.

Two of the exceptions related to hypothetical questions put by the defendant to an expert medical witness called by it.   It has been said, "It is impossible to state in a general rule all the elements of a legitimate hypothetical question. . . . The law leaves to the presiding judge the power to decide what to admit and what to exclude."   *Taylor* v. *Creeley*, 257 Mass. 21, 27.   Here there was evidence from which the jury could have found that the facts embraced in the questions were true and the questions were properly admitted.   *Sullivan* v. *Brabason*, 264 Mass. 276, 288–289. *Kramer* v. *New York Life Ins. Co.* 293 Mass. 440, 445–446.

There remains for consideration the plaintiff's exception to the denial of her motion for a new trial.   The principles of law respecting the allowance of motions for new trial are clearly and ably set forth in *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 495–497.   They are so well settled that

it is unnecessary to repeat them. It is enough to say that the application of these principles to all the evidence in this action and to the facts recited in the affidavit accompanying the motion for new trial discloses no error.

*Exceptions overruled.*